BERNDT ET AL. *v*. BONACKER ET AL.

*Wills—Contest—Evidence—Hypothetical question need not con-
tain statement not proven—Error excluding question cured
by admitting answer after statement proved—Mental
capacity of testator—Question for jury—Verdict sustain-
ing will not against weight of evidence.*

1. To require propounder of hypothetical question to incorpor-
ate statement not yet proven is reversible error, unless
cured.

2. Exclusion of hypothetical question because statement not
yet proven was not incorporated, though error, *held*
cured, where it was asked later, containing such state-
ment which had then been proved, and answer was same
as indicated in proffer made at time of its exclusion.

3. Evidence *held* sufficient to take question of testator's
mental capacity to jury, and to support verdict uphold-
ing will.

(Decided June 1, 1926.)

ERROR: Court of Appeals for Butler county.

*Mr. C. F. Antenen, Mr. Charles Dornette,* and
*Mr. P. P. Boli,* for plaintiffs in error.
*Messrs. Fitton & Beeler* and *Mr. W. C. Shepherd,*
for defendants in error.

HAMILTON, J. This was an action to set aside the
will of Louis G. Bonacker, on the ground that the
testator, at the time of making the will, was of
unsound mind, and did not have sufficient mental
capacity to make a will.

Two questions of error are claimed and pre-
sented: First, that the court erred in refusing to
permit Dr. H. H. McClellan, called as an expert

witness, to answer the hypothetical question propounded by counsel for the plaintiffs; second, that the verdict and judgment are manifestly against the weight of the evidence.

As bearing on the weight of the evidence, the point is made that there were frequent interruptions during the progress of the trial, which caused the trial to be prolonged over a great number of days after the evidence of the plaintiffs had been submitted, all of which tended to prevent plaintiffs from having a fair trial. This point only bears on the main proposition of the weight of the evidence.

As to the question of the refusal of the court to permit Dr. McClellan to answer the hypothetical question, it appears that the objection to the answer and question was that the hypothetical question did not contain the statement, not yet proven, that the testator, while in a hospital, was given hypodermic injections. This was clearly error, which, if not cured, would require a reversal of the case. All that the propounder of a hypothetical question is required to do is to incorporate evidence submitted, which tended to prove pertinent facts claimed. It is not necessary that the hypothetical question contain a statement of the entire case.

On the refusal of the court to permit the expert to answer the question, counsel made a proffer to the effect, that, if permitted to answer, the doctor would say the testator was insane. Later, evidence was offered tending to establish the fact that hypodermic injections had been given while in the hospital, and Dr. McClellan was recalled as a witness. Upon his recall, the same question was submitted with the additional evidence relating to hypodermic

injections. The doctor was permitted to answer this question, and his answer was that the testator was insane. The adding of the evidence of the hypodermic injection to the original question did not weaken the question, in fact it strengthened it, and the answer of the expert was the same as indicated in the proffer made at the time of the exclusion of the first question. The error was therefore cured, and no prejudice resulted to the plaintiffs.

The remaining question is as to the weight of the evidence. The record is quite voluminous, consisting of the testimony of some 40 witnesses, 23 for the contestants and 17 for the defense, including recall for rebuttal. It would serve no purpose to detail the evidence at length.

The contestants' witnesses gave testimony of peculiar conduct and actions on the part of the testator, covering a period of several years preceding the making of the will, and like testimony as to his actions subsequent to his making of the will.

The will was executed September 22, 1923. Testator died the latter part of March, 1924.

There was evidence tending to show that for some years prior to the making of the will testator was treated intermittently for syphilis; that during the year preceding the making of the will marked changes were noticeable in his walk and talk; that his speech was slow; that he articulated indistinctly, and was hard to understand; that he would talk of trivial things; that in his work, in a foundry, he failed to follow the directions of his employers, and would argue with them that his work was

correctly done; that he claimed to be an expert tree trimmer, and asserted that the Lord had placed the trees on earth, and placed him on earth as the only person who could properly trim them, and that he was the best tree trimmer in the country; that he frequently told persons that a young lady, with a large automobile, took him out riding frequently; that about a month prior to the making of the will he was operated on, at a hospital, for hernia; that while in the hospital, he would undertake at night to get out of his bed and leave the hospital, and they would have difficulty in quieting him; and that he caused a commotion, and made extravagant statements of what he would do if not permitted to leave.

Witnesses for the defense denied many of the things testified to by witnesses for plaintiffs, and testified that some of the ridiculous statements made were in the nature of boastfulness; denied that he was dirty and unkempt, and gave testimony that he transacted his business in the usual way; that he always had more or less business; that while in the hospital he executed a power of attorney, under which the attorney in fact collected his rents while he was in the hospital; that a short time prior to, or about the time the will was made, he platted real estate, and arranged for partition thereof; that he transacted business with the People's Building & Loan Association, making deposits and withdrawals, and did the same with other loan associations, and continued to make deposits and withdrawals subsequent to the making of the will, and up until the time of his death; in fact, until March 17, 1924. The officers of these associations

noticed little change in Bonacker from 1918 until he had a stroke in February, 1924.

There is evidence that he transacted business at the banks; the banks accepting his notes and the renewals thereof as late as February 13, 1924, about a month prior to his death.

Enough has been said to show the conflict in the testimony, and that the question was one which the jury alone could decide. To hold the verdict to be manifestly against the weight of the evidence would be usurping the function of the jury in this case.

We find no error in the record, and the judgment will be affirmed.

*Judgment affirmed.*

BUCHWALTER, P. J., and CUSHING, J., concur.